**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **JOSIF LENTOS,** | ) | Case No. 4:07CV3045 |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **PLAINTIFF'S** |
| **v.** | ) | **BRIEF IN OPPOSITION TO** |
| | ) | **DEFENDANT'S MOTION FOR** |
| **HAWKINS CONSTRUCTION** | ) | **SUMMARY JUDGMENT** |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

This case involves a fact situation where indeed there are many facts which are not in dispute, however, it is the application of the law to those facts. It is Plaintiff's contention that the facts show that the Defendant is in violation of the ADA by requesting that he submit to a post hire, pre-employment physical, which he passed, and then requiring release of more information from previous job related injury, and then rescinding the offer based on the additional information related to his previous injuries. Additionally he has a National Origin claim because of his not being hired, when the employer hired a number of persons of Mexican National Origin.

## **Statement of Facts**

1.     Plaintiff agrees that Defendant's statements numbered 1-5 are not

1

controverted, as they are the allegations of Plaintiff's petition which support his claim.


2.      Defendant's paragraph number 6 is not controverted.  Although Plaintiff testified that he doesn't read or write well, he did fill out the application. (Defendant's exhibit C, Plaintiff's deposition 14:2-22)


3.      Defendant's paragraph #7 is not controverted, it supports Plaintiff's position that he is not Hispanic.


4.      Defendant's paragraph number 8 is controverted.  Pope testified he would have offered the Plaintiff the job prior to the date he filled out the pre-employment packet, he doesn't recall the date. (Defendant's exhibit B, Pope deposition, 21:15-22:21).  Lantos testified that on the 19th of April, Pope called him to tell him he no longer had a job for him. (Defendant's exhibit C, Plaintiff's deposition 28: 18-30-13).


5.      Defendant's paragraph 9 is controverted.  Mark Pope had worked for Hawkins Construction 23 years. (Defendant's exhibit B, Pope deposition 4:25-5:4)

2

He had been the superintendent and the assistant superintendent before assuming the positions of personnel manager. (Defendant's exhibit B, Pope deposition 6:1-12) Pope has worked for Hawkins his whole career. (Defendant's exhibit B, Pope deposition 5:23-25)

6.    Defendant's paragraph 10 is not controverted, as it supports the Plaintiff's contention.

7.    Defendant's paragraph 11 & 12 is not controverted.

8.    Defendant's paragraph 13 & 14 are controverted.  Pope doesn't recall the details of Lantos coming in and filling out the paperwork. (Defendant's exhibit 3, Pope deposition 23:3-24:10.)  Mr. Lantos could not really read the documents but filled them out to the best of his ability. (Defendant's exhibit C, Plaintiff's deposition 34:1-24)

9.    Defendant's paragraph 14, 15 & 16 are not controverted.

10.    Defendant's paragraph 17 is controverted only to the extent that the

3

post office employee statement appears to sat that the company is no way

obligated to employ the employee, however in reality they have already employed

the employee by the time they sign the post offer employee statement.

(Defendant's exhibit C2, p. 4)


     11.    Defendant's paragraph 18, 19 & 20 are not controverted.


     12.    With respect to Defendant's paragraph 20, Plaintiff would also state

that he did have problems in the past but he was fit to perform the cement finisher

job. (Defendant's exhibit C, Plaintiff's deposition, 38:15-39:7.)


     13.    Defendant's paragraph 21 and 22 are not controverted.


     14.    Defendant's paragraphs 23 and 24 are not controverted in fact are the

basis for the Plaintiff's claim.


     15.    Paragraph 26 in controverted, while Defendant's claim Pope received

a call from Company Care, the evidence shows that St. E's sent confirmation that

Lantos met the screening guidelines. ( Defendant's exhibit B2).  They did not even

check the box "recommend further evaluation by a physician or other health care

provider." (Defendant's exhibit B2)


16.     Defendant's paragraph 27 and 28 are not controverted.  At the

Defendant's requested Lantos signed an additional authorization.  This is the

additional improper, post offer pre employment physical alluded to in the

complaint since Lantos had passed the post offer pre- employment physical.

(Defendant's exhibit B-2).


17.     Defendant's paragraph 29 is controverted, Pope claims not to

remember what precisely was said, who called him, which was in violation of

HIPPA, obviously for not having signed consent at the time. (Defendant's exhibit

B, Pope deposition 38:1-45:22) Pope was on a fairly cordial basis with the people

at St. E's Company Care and spoke to them often about pre employment physicals

and work related injuries. (Defendant's exhibit B, Pope deposition 36:2-15).


18.     Defendant's statement of fact 30, 31 & 32 are not controverted and

support Plaintiff's claims.

19.    Defendant's paragraph 33 is objected to as hearsay if it purports to report Plaintiff's current condition, Plaintiff was examined by Company Care and post offer pre-employment physical (Defendant's exhibit B2 and BI, Defendant's Exhibit B1, Pope deposition 54:11-25, 46:3-14)

20.    Defendant's paragraph 34 is objected to as hearsay if it purports to report Plaintiff's current condition, Plaintiff was examined by Company Care and post offer pre-employment physical (Defendant's exhibit B2 and BI, Defendant's Exhibit B1, Pope deposition 54:11-25, 46:3-14).

21.    Defendant's paragraph 35 is controverted as will be further addressed in our argument, a jury may determine that the Defendant's saying they are relying on the misrepresentation to turn the Plaintiff down, may dra an inference that they are relying on the fact of the previous injury, which is a record of a disability and/or a perception that the Plaintiff is disabled.  Further Pope testified he believed the Plaintiff could not work the job cased on the hospital information. SO a part of his motivation, was the receipt of the impairment rating. ( Defendant's exhibit B, Pope's deposition 52:8-22) Additionally Pope told the Plaintiff it was because of his physical troubles, not the misrepresentation.

6

( Defendant's exhibit C, Plaintiff's deposition 58:3-59:24).

      22.     Defendant's paragraph 36 is not controverted as it supports Plaintiff's claim.

      23.     Defendant's paragraphs 38 and 39 are not controverted and Plaintiff testified he could perform the job as a concrete finisher. (Defendant's exhibit C, Plaintiff's deposition 64:9-65:7;65:6-25) Plaintiff was physically examined and cleared to work for Hawkins Construction. (Defendant's exhibit B1 and B2)

      24.     Defendant's paragraphs 41-47 are controverted.  A concrete finisher doesn't have to lift so much. (Defendant's exhibit C, Plaintiff's deposition 18:4-8) The finisher doesn't shovel the concrete.  (Defendant's exhibit C, Plaintiff's deposition 18:10-13) He would use a trowel to finish the concrete. (Defendant's exhibit C, Plaintiff's deposition 18:14-20.  The finisher may set up and pour concrete into the forms. (Defendant's exhibit C, 18:21-19:4) The finisher could direct the concrete into the forms from that gate off the truck. (Defendant's exhibit C, Plaintiff's deposition 20:4-14)

      25.     Defendant's paragraph 48 is not controverted to the extent that the job

is a physical job, not like a desk job. (Defendant's exhibit C, Plaintiff's deposition 72:21-73:2).

26.     Defendant's paragraph 49 is controverted Lantos testified that the job required you to rod concrete for 3 to 4 hours and after that finish concrete and you have to stay on your knee, you don't have to bend over all day. (Defendant's exhibit C1, Plaintiff's deposition 73:6-17).

27.     Defendant's paragraphs 50-53 are not controverted.

28.     Defendant's paragraph 54 is controverted.  Lantos has been on light duty, but people change. (Defendant's exhibit 1, Plaintiff's deposition 74:14-75:18.)  Plaintiff was physically examined and cleared to work by the examination. (Defendant's exhibit B1& B2).

29.     Defendant's paragraph 55 is not controverted, but Plaintiff was treated and given medication. (Defendant's exhibit C1, Plaintiff's deposition 84:9-85:7)

8

30.     Defendant's paragraph 56,57, and 58 are controverted.  In context, Lantos being unable to read and write well and the documents being not filed out completely is come evidence that Plaintiff was not intentionally misleading the company.  Further, Defendant did not ask these questions before hiring and they could not have been a material question as it would be illegal for them to deny employment based on a record of a disability.

31.     Defendant's paragraph  59and 60 are objected to as irrelevant as the Defendant's own evidence shows that the Plaintiff's physical examination reflected he could bend and flew without discomfort. (Defendant's exhibit B1, Page 4.)

32.     Defendant's paragraph 61 is admitted.

33.     Defendant's paragraph 62,63 & 64 are admitted.  However being from Europe would show he was not Mexican.

## ARGUMENT

## I.

## SUMMARY JUDGMENT SHOULD NOT BE GRANTED WHERE THERE

## ARE GENUINE ISSUES OF MATERIAL FACT

The question before the district court is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©; see, e.g. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *Morgan v. Rabun*, 128 F.3d 694, 696 (8th Cir. 1997), *cert. denied*, 523 U.S. 1124 (1998).

Summary judgment is an extreme and treacherous device, which should not be granted unless the moving party has established a right to a judgment with such clarity as to leave no room for controversy, and unless the other party is not entitled to recover under any discernible circumstances. *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). In ruling on a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion and give that party the benefit of all reasonable inferences to be drawn from the record. *Id.*; *Widoe v. District No. 111 Otoe County Sch.,* 147 F.3d 726, 728 (8th Cir. 1998); *Ghane v. West*, 148 F.3d 979, 981 (8th Cir. 1998). Even if the district court is convinced that the moving party is entitled

10

to judgment, the exercise of sound judicial discretion may dictate that the motion should be denied, so the case may be fully developed at trial. *McLain v. Meier*, 612 F.2d 349, 356 (8th Cir. 1979); *Franklin v. Lockhart*, 769 F.2d 509, 510 (8th Cir. 1985).

Essentially, the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 251-52. The court's role is simply to determine whether the evidence in the case presents a sufficient dispute to place before the jury.

> "At the summary judgment stage, the court should not
> weigh the evidence, make credibility determinations, or
> attempt to determine the truth of the matter. Rather, the
> court's function is to determine whether a dispute
> about a material fact is genuine . . . .
> If reasonable minds could differ as to the import of the evidence,
> summary judgment is inappropriate."

*Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996) (internal citations omitted). See also <u>*Bell v. Conopco, Inc.,*</u> 186 F.3d 1099, 1101 (8th Cir. 1999) (court's function is not to weigh the evidence to determine truth of any

factual issue).

The Eighth Circuit Court of Appeals has repeatedly cautioned that summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact-based. *Chock v. Northwest Airlines, Inc.*, 113 F.3d 861, 862 (8th Cir. 1997); *Hardin v. Hussmann Corp.,* 45 F.3d 262, 264 (8th Cir. 1995). "Summary judgments should be sparingly used and then only in those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir. 1991) (citing *Hillebrand v. M-Tron Indus., Inc.*, 827 F.2d 363, 364 (8th Cir. 1987)*, cert. denied,* 488 U.S. 1004 (1989)). "Because discrimination cases often turn on inferences rather than on direct evidence, [the court must be] particularly deferential to the nonmovant." *Snow v. Ridgeview Med. Ctr.*, 128 F.3d 1201, 1205 (8th Cir. 1997) (citing *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994)).

## II

## THE PLAINTIFF HAS A VALID ADA CLAIM.

The defendants first argue that the plaintiff cannot perform the essential functions of the job of concrete Finisher.  The evidence, however is totally to the contrary.  The Plaintiff was subjected to a post offer pre-employment physical where in he was found to meet the screen guidlines. (Defendants exhibit B2.)  He

was subjected to a complete physical, (Defendants exhibit B1,) which tested his ability to lift and bend and stretch and do the job requirements, which shows that he was not limited from performing the job. Thus the Defendants have created the evidence that supports his ability to perform the job.  The record of the previous injury are not reflective of his current condition.

The ADA was created to ensure that individuals who have disabilities or are perceived to have disabilities are protected from discriminatory employment practices. In order to prove discrimination, the plaintiff can use either direct or circumstantial evidence. *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (9th Cir. 1998). When proving circumstantial evidence, the plaintiff has to make out a prima facie case under the McDonald-Douglas burden-shifting scheme, after which the burden of proof shifts to the defendant to articulate a legitimate and non-discriminatory reason for the employment action. The plaintiff can then prove this reason is in fact pretext. *Id.* at 805. The fact-finder is then responsible for deciding whether the employer's reason for taking the disputed employment action was legitimate or pretextual.

The ADA precludes an employer from gathering or disseminating confidential medical information regarding an employee without business necessity. See *Cossette v. Minnesota Power & Light, 188 F.3d 964, C.A.8*

*(Minn.),1999.*  In *Cossette* eighth circuit noted the following are the requirments in the law as it related to medical information:

(3) Employment entrance examination

A covered entity may require a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties of such applicant, and may condition an offer of employment on the results of such examination, if-

(A) **all entering employees are subjected to such an examination regardless of disability**;

(B) information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record, [subject to three exceptions not relevant here],...; and

(C) the results of such examination are used only in accordance with this subchapter.

(4) Examination and inquiry

(A) Prohibited examinations and inquiries

A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

(B) Acceptable examinations and inquiries

14

A covered entity may conduct voluntary medical examinations, including voluntary medical histories, which are part of an employee health program available to employees at that work site. A covered entity may make inquiries into the ability of an employee to perform job-related functions.

(C) Requirement

Information obtained under subparagraph (B) regarding the medical condition or history of any employee are subject to the requirements of subparagraphs (B) and (C) of paragraph (3).

In the case at hand, all employees were subjected to the physical examination.  Only Lentos was subjected to the further requirement of releasing his  record back to 2003, thus this a violation of the law.

The ADA allows employers to make conditional job offers that depend on the outcome of an employment entrance exam. 42 *U.S.C.* § 12112(d)(2). The scope of these entrance examinations is not restricted to the traditional disability test of job-related matters that are consistent with business necessity. The entrance exams tests do not have to be job-related at all.  *Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260, 1273 (9th Cir. 1998). However, the *use* of the entrance exam *does* have those same restrictions. § 12112 (d)(3)(C). Under the ADA, a job offer can only be withdrawn on the basis of the entrance exam test if "performance of the essential job functions cannot be accomplished with reasonable accommodation." *Garrison v. Baker Hughes Oilfield Operations*, 287 F.3d 955,

15

960 (10th Cir. 2002) (quoting 29 C.F.R. § 1630.14(b)(3).

In *Garrison*, the 10th cir. ruled that it could be found that an employer used discriminatory employment practices when it withdrew a conditional job offer after finding out that there had been past injuries to the applicant. *Id.* at 961. The plaintiff applied for an assembly job and after being conditionally hired, lied when he filled out the questionnaire for the entrance exam stating he had not suffered previous injuries. The defendant acquired past worker's compensation reports that said the plaintiff had suffered past injuries relating to his hearing, back, neck, abdomen, knee and feet. The defendant then withdrew the job offer stating that the worker's comp history had been used "...[to] look at...in terms of where we are placing people for possible future injuries." During trial, the defendant asserted the job offer had been withdrawn because the plaintiff had lied on the medical history questionnaire. *Id* at 958-9.

The Defendants also argue that the plaintiff must show he is a disabled individual for a part of his prima facie case. The law is to the contrary. In *Garrison*, the court first dealt with the issue of whether the plaintiff had to actually be disabled to be covered by § 12112(d)(3)(C) since the wording protects those "with disabilities." In deciding the plaintiff did not have to be disabled the court relied heavily on the Technical Assistance Manual issued by the EEOC which

16

states that "[t]he results of a medical inquiry or examination may not be used to disqualify *persons who are currently able to perform the essential functions of a job, either with or without accommodations*, because fear or speculation that a disability may indicate a greater risk of future injury, or absenteeism, or may cause future workers' compensation or insurance costs." *Id.* at 960 (emphasis added). The eighth circuit has adopted a similar view. *Cossette v. Minnesota Power & Light, 188 F.3d 964, C.A.8 (Minn.),1999.*

In addition, the court ruled that to invoke §12112(d)(3)(C), a party must show there was an entrance exam and that it was used improperly. *Id.* at 961. Improper use could be found in the defendant's statements made to plaintiff when withdrawing the job offer, which showed that defendant relied on factors that would not affect the performance of essential job functions. *Id.* at 960.

Lastly, the court found that the false statements on the medical history questionnaire did not preclude an ADA claim. *Id.* at 961. However, the court also stated that nothing in the ADA would keep a jury from finding that lying on an application would be a sufficient motive and could be used as a legitimate, non-discriminatory reason for withdrawing the job offer. *Id.* at 961. The matter was remanded for jury consideration.

**III.**

## THERE IS SUFFICIENT EVIDENCE OF NATIONAL ORIGIN

## DISCRIMINATION.

The Eighth Circuit has recognized sensitive and difficult issues of intentional discrimination will frequently be proven by circumstantial evidence of pretext, as there will seldom be `eyewitness' testimony as to the employer's mental processes.  For this reason the Courts generally turn to the framework of _McDonnell Douglas v. Green_, 411 U.S. 792 (1973).

1.   The Plaintiff is of Iraqi National Origin.

2.   The Plaintiff was satisfactorily performing his job duties.

3.   The Plaintiff was either transferred to a job his religious convictions wouldn't permit, or was fired. .

Upon making out a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. _McDonnell Douglas Corp. v. Green_, 411 U.S. 792, 802 (1973).

In the case at hand, the Defendant is blurring the line between the required element that the plaintiff was satisfactorily performing his job duties and the requirement of the Defendant articulating a legitimate, non discriminatory reason for the treatment of the Plaintiff.  _See_ _Fisher v. Pharmacia & Upjohn_, 225 F.3d

*915 C.A.8 (Iowa),2000* and *Brooks v. Woodline Motor Freight, Inc.,852 F.2d 1061,C.A.8 (Mo.),1988.*

The Plaintiff worked for nearly two years without incident, and then suddenly, without disciplinary warning the Defendants terminated the Plaintiff, after a claimed attempt to move him to a position which was obviously not acceptable to him given his religious beliefs. The Plaintiff has met the burden of showing that he was meeting the legitimate expectations of his employer.

After the employee demonstrates the prime facie case, the burden then shifts to the Defendants to articulate a legitimate, non discriminatory reason.  Provided the employer can satisfy its burden of articulating a legitimate non-discriminatory reason for its action against the employee, the burden of production then shifts back to the employee to demonstrate that the employer's proffered reason is a pretext for unlawful discrimination.  *St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993).*  After the burden shifts back to the employee, the evidence produced to show a prima facie case and the "inferences drawn therefrom may be considered by the trier of fact on the issue of whether the [employer's] explanation is pretextual." *Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255 (1981).*

19

A pretext, in employment law, is a reason that the employer offers for the action claimed to be discriminatory,  that the court disbelieves, allowing an inference that the employer is trying to conceal a discriminatory reason for his action.  *Ryther v. Kare 11, 108 F.3d 832 (8th Cir. 1997).*

Pretext evidence "must call into question the veracity of the defendant's ultimate justification."  *Ryther v. Kare 11, 108 F.3d 832 (8th Cir. 1997) quoting Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 97 F.3d 436, 444 (11th Cir. 1996).  See also Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1124 (7th Cir. 1994)* (a plaintiff must "produce evidence from which a rational fact finder could infer that the company lied").  *See also United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983)* ("sensitive and difficult" issues of intentional discrimination will frequently be proven by circumstantial evidence of pretext, as "[t]here will seldom be `eyewitness' testimony as to the employer's mental processes"); *Id. at 714 n.3; International Bhd. of Teamsters v. United States, 431 U.S. 324, 358 n. 44 (1977)* ("[T]he McDonnell Douglas formula does not require direct proof of discrimination."); *McDonnell Douglas, 411 U.S. at 804-05* (listing various types of circumstantial evidence as relevant to showing of pretext); *Price Waterhouse v. Hopkins, 490 U.S. 228, 273 (1989)* (O'Connor, J., concurring in judgment) (emphasis in original) (noting that "requiring the plaintiff to prove that

20

any one factor was the definitive cause of the decision makers' action may be

tantamount to declaring [anti-discrimination law] inapplicable to such decisions");

_Nitschke v. McDonnell Douglas Corp._, _68 F.3d 249, 251 (8th Cir. 1995)_ ("An

age-discrimination plaintiff may rely on either direct or circumstantial evidence to

prove that he has been the victim of unlawful discrimination.").

> [i]f (1) the elements of a prima facie case are present, and
> (2) there exists sufficient evidence for a reasonable jury
> to reject the defendant's proffered reasons for its actions,
> then the evidence is sufficient to allow the jury to
> determine whether intentional discrimination has
> occurred.

_Rothmeier v. Investment Advisers, Inc.,_ _85 F.3d 1328 (8th Cir. 1996), quoting_

_Gaworski v. ITT Commercial Fin. Corp.,_ _17 F.3d 1104, 1109 (8th Cir.) cert._

_denied, 115 S.Ct. 355 (1994)._

Here, the facts indicate that a material question of fact exists as to whether

reasons given in the treatment of the Plaintiff are pretextual, given the fact that the

Plaintiff had been offered a job.  He then came into the office for his Post offer,

preemployment physical, and witnessed a waiting room full of hispanic

individuals and thereafter they dug into his past history, illegally as more fully set

out above and elected not to use him as an employee.  While it is conceded, that

Lentos' ADA claim is much stronger than his National Origin claim, it is

submitted that both claims should proceed to trial for a determination by the jury.

Respectfully submitted this 28th  day of September, 2007.

**JOSIF LENTOS, Plaintiff,**

By:    s/ Joy Shiffermiller

 Joy Shiffermiller, # 18164
*SHIFFERMILLER LAW OFFICE P.C., L.L.O.*
3930 South Street, Ste 101
Lincoln NE 68506
(402) 484-7700

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of September, 2007, I electronically
filed the foregoin Notice of Service with the Clerk of the Court using the CM/ECF
system, which will send notification of such filing to the following:

Adam J. Prochaska
800 Lincoln Square
121 South 13th Street
P.O. Box 82028
Lincoln NE 68501-2028
402-434-3000

s/ Joy Shiffermiller

Joy Shiffermiller